UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN MICHAEL PETERS,<br><br>Petitioner,<br><br>v.<br><br>RAYMOND MADDEN, Warden,<br><br>Respondent. | Case No. 22-cv-06480 EJD (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK** |

Petitioner filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction.  The Court found the petition, ECF No. 1, stated a cognizable claim which merited an answer from Respondent.  ECF No. 8.[1]  Respondent filed an answer on the merits, ECF No. 15-1.  Petitioner did not file a traverse although given ample time and opportunity to do so.  For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

## I. BACKGROUND

On or about February 14, 2018, the Napa County District Attorney charged Petitioner with twenty counts of making criminal threats (Cal. Penal Code § 422) and five counts of attempted criminal threats (Cal. Penal Code § 664/422), and further alleged that he had two prior strike convictions (Cal. Penal Code § 667(b)-(i)).  Ex. 1[2] (Clerk's Transcript ("CT")) at 2-13.  Petitioner was arraigned on April 30, 3018.  CT 24; Ex. 2 (Reporter's Transcript ("RT")) at 1RT.

On May 7, 2018, Petitioner filed a motion to recuse the entire Napa County District Attorney's Office.  CT 41-45.  On May 21, 2018, a representative of the California Attorney

---

[1] The matter was reassigned to the Undersigned on November 28, 2022.  ECF No. 11.
[2] All references to exhibits are to Respondent's exhibits in support of their Answer.  ECF No. 16.

General's Office informed the court that it had taken over the prosecution without the need for a recusal hearing. CT 56; 4RT 151.

On July 10, 2018, the prosecution filed an amended complaint charging Petitioner with twenty counts of making criminal threats and five counts of attempted criminal threats, and further alleging that Petitioner had three prior serious felony convictions (Cal. Penal Code § 667(a)) that also qualified as strikes (Cal. Penal Code §§ 667(b)-(i)). CT 63-67. On the same day, the parties reached a plea agreement in which Petitioner pled no contest to five counts of criminal threats and admitted having one prior serious felony and one prior strike conviction in exchange for a stipulated sentence of sixteen years, four months, and the dismissal of the remaining charges and priors. CT 61-62, 79-83; 6RT 252-256. On May 13, 2019, the court sentenced Petitioner pursuant to the terms of the plea. CT 105-106.

On January 29, 2020, the California Court of Appeal affirmed the conviction in an unpublished opinion. Ex. 6. Petitioner did not seek review in the California Supreme Court.

On October 6, 2020,[3] Petitioner filed a petition for writ of habeas corpus in Napa County Superior Court. Ex. 7. The superior court denied the petition on May 26, 2021. ECF No. 1-2 at 45-46.

On June 22, 2021, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. Ex. 8. The state appellate court denied the petition on August 4, 2021. Exs. 9-11; ECF No. 1-2 at 49-50.

On October 25, 2021, Petitioner filed a petition for writ of habeas corpus on the California Supreme Court, which denied it on May 18, 2022, with a citation to People v. Duvall, 9 Cal.4th 464, 474 (1995) (a petition for writ of habeas corpus must include copies of reasonably available documentary evidence). Exs. 12, 13.

On October 3, 2022, Petitioner filed the instant federal habeas action. ECF No. 1.

---

[3] Respondent applies the mailbox rule in determining the filing date for all the habeas petitions filed by Petitioner. See ECF No. 15-1 at 6, fn. 1, citing Houston v. Lack, 487 U.S. 266, 270 (1988) and Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003).

## II. STATEMENT OF FACTS

The following summary of Petitioner's offenses are taken from the probation report:

The following is a summary of the Napa County District Attorney's Officer Investigations report number NDA 17-000030, dated October 30, 2017:

On July 5, 2017, the Napa County District Attorney's office received a letter addressed to Deputy District Attorney Lance H. (LH)  The letter indicated it was from an inmate at San Quentin named Darren PETERS and threatened violence/death/assault toward LH and his family, and other people involved in PETERS recent conviction, including victim Robert P. (RP) and his family, and Napa PD Sgt. Andy H. (AH), the investigating officer in that matter.

The letter made it clear LH prosecuted PETERS, who was sent to prison upon conviction.  In the letter PETERS said he wanted to kill LH and his family, as well as RP and his family.  PETERS described the torture with which he planned to harm LH's family, including watching them be placed in a "reverse human centipede" and putting "6 inch thick wooden poles in the bitches pussies."  PETERS added that AH would be "rotting in hell" along with LH.  PETERS then wrote about murder being his favorite hobby, and claimed responsibility for two prior murders, although he did not give details about those supposed incidents.  The physical letter contained handwriting that appeared to match file samples of the defendant's handwriting from his case and court files.  Additionally, he signed his name as he had in a previous letter to the court (which was scanned but not delivered to the judicial officer) with a distinctive dash at the beginning and ending of the signature.

The envelope contained the words "Confidential Legal Mail" which, according to prison staff, indicates the contents are privileged communications, rending [sic] the free from search or interception by prison staff.  The investigator believed this was done to assure the threatening letter reached its targets.

On July 7, 2017, two DA Investigators (MF and NC) went to San Quentin to interview the defendant.  They first spoke with the defendant's roommate, who said he recognized the defendant's handwriting on the paper they showed him, and said he had seen the defendant writing it, because he recognized the greeting on the first page.  The roommate talked about the defendant being "just another inmate," and then described the defendant as young, remorseful, and smart enough to know how to manage his anger issues.  The roommate also said staff force[d] the defendant to take his mental health medication every day, under threat of being written up.

The investigators then spoke with the defendant who said he knew why they were there and understood his rights.  He told officers the day he wrote the letter he was having a "perfect" day.  He further said he "definitely" meant every word written, and "of course" intended to instill fear in the people he mentioned in the letter.  PETERS said he was more than willing and capable of carrying through with the threats.  When asked if his "nice" behavior toward his roommate was all an act, PETERS said he doesn't let people see what he is capable of unless they deserve it.  PETERS went on to say that, in his eyes, "LH and all the other motherfuckers that put me in this situation deserved it."  PETERS reiterated that he meant every word in the letter and was more than happy and willing to follow through with the threats.

The investigators tried to move on to the second portion of the letter, in which the defendant claimed to have murdered two people in unrelated incidents, but the defendant wanted to go back to the first part. PETERS said LH was a "shitty prosecutor" who "couldn't keep the attempted murder charge" on him. He further said he was not sorry about what happened during the robbery and that he "really wanted PORTER to die" that day. When the investigators pointed out to PETERS that the letter would likely increase his sentence, the defendant said he "could care less." The defendant said he is diagnosed with Bi-Polar Disorder, PTSD, oppositional defiant disorder, and ADHD. The defendant said he was taking his medication regularly and felt "completely in control" when he wrote the letter and "knew exactly" what he had done. He further confirmed that AH mentioned in the letter referred to the lead investigator in the robbery case.

The investigators then asked PETERS about the two murders he claims to have committed in the past. The defendant provided some details about those supposed incidents, and said he included the information in the letter to provide LH with an opportunity to "redeem" himself with regard to prosecution. When the investigator pointed out that successful prosecution of additional crimes would certainly lead to more time in prison for him, the defendant said, "I don't really give a fuck what happens honestly" and "what I said in the letter, I'm willing to carry out."

Each of the victims was contacted. The professionals involved told the investigating officer they were aware of the defendant's mental health issues and of the threats contained in the letter, and were mostly focused on protecting their families. Those not entitled to confidential case information were aware only of the letter and threats contained therein. One of the victims described PETERS as a "young guy who thinks he has something to prove." Some of the victims chose not to read the defendant's letters. Several said the defendant's words were "alarming" and they felt "freaked out" and "fearful." Each victim said they would take precautionary measures to protect themselves and their families from the defendant.

On August 14, 2017, the District Attorney's Office received a second letter, also addressed to LH. The envelope was sent from CDCR's medical facility in Vacaville, and bore the defendant's name, CDCR#, and housing information. It also contained the words, "Confidential Legal Mail" and contained apparently the same handwriting and unique manner of signature as the first letter.

In the second letter, PETERS tells LH he is not afraid of an investigator and says the investigator (NC) is "now on the hit list" as well as "that cunt TH." The defendant then provides a full list of his intended victims, including LH, RP, AH, NC, and TH, as well as all their families. Although TH was not involved in prosecuting the defendant's robbery case, she did prosecute the defendant's father, who is now serving a prison sentence.

PETERS then refers to the previous letter, saying he is displeased with LH's prosecution skills, then mentions TH again. PETERS said he wants to give TH a "dick in a box." He then insults TH, saying, "She's a filthy, cum guzzling ratchet whore," and "she'll fuck around and give a nigga Herpegohnasyphilaids [sic] with her grimy ass." He then goes on to suggest he would commit a felonious sex act against TH by saying, "If I was desperate, I'd take it from the bitch with no offer."

PETERS then threatens to microwave RP's heart and "serve it at the table." He then says he will be "spitting on your graves soon enough." PETERS closes the letter telling LH to "tell Kent to stop crying like a little bitch." It is believed that Kent could possibly be KG, the owner of the business PETERS robbed in his committing offense.

CT 48-50.

### III. DISCUSSION

**A.    Legal Standard**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's]

5

decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, as noted above, the California Supreme Court denied Petitioner's habeas petition with a citation to People v. Duvall, 9 Cal.4th 464, 474 (1995). See supra at 2; Ex. 13. The California Court of Appeal, in denying Petitioner's habeas petition, addressed the sole claim in the instant petition. ECF No. 1-2 at 49-50. The Court of Appeal thus was the highest court to have reviewed the claim in a reasoned decision, and it is that decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam); Harrington v. Richter, 562 U.S. 86, 97-100 (2011). As the Court has explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner v. Jackson, 562 U.S. 594, 598 (2011) (per curiam) (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

B.   **Claims and Analysis**

Petitioner seeks federal habeas relief based on a single claim: he received ineffective assistance of counsel ("IAC") during the plea-bargaining process. ECF No. 1 at 15. In the

6

attached petition to the state supreme court, Petitioner claims that counsel was ineffective for "failing to obtain petitioner's medical records, and investigate a possible mental health defense, prior to advising petitioner to accept the People's plea offer." ECF No. 1-1 at 22.

1. **Procedural Default**

Respondent first asserts that Petitioner's IAC claim may be procedurally defaulted. The IAC claim was not raised on appeal. Ex. 6. Rather, it was raised in each of Petitioner's habeas petitions at every state court level. See supra at 2. The state high court rejected the IAC claim because Petitioner failed to support his petition with "copies of reasonably available documentary evidence." Ex. 13. Based on this denial, Respondent asserts that the claim may be procedurally defaulted. ECF No. 15-1 at 10.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Id. at 750.

Federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750. In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court announced an equitable rule by which cause may be found for excusing a procedurally defaulted claim of ineffective assistance of trial counsel where a petitioner could not have raised the claim on direct review and was afforded no counsel or only ineffective counsel on state collateral review.

The Ninth Circuit has indicated that because procedural bar issues "are not infrequently more complex than the merits issues presented by the appeal . . . it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d

1223, 1232 (9th Cir. 2002); see also Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving [a merits question] priority . . . if it were easily resolvable against the habeas petitioner."); cf. 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies).

In this case, the Court finds that the interests of judicial economy support addressing the merits of Petitioner's claim without first determining whether the claim is procedurally defaulted. Respondent also submits that the Court may proceed on the merits without resolving the procedural bar issue. ECF No. 15-1 at 12. As Petitioner's IAC claim fails on the merits, the result is the same as if the claim was procedurally barred. See Lambrix, 520 U.S. at 525.

2. **Ineffective Assistance Claim**

Respondent argues that the IAC claim is without merit because Petitioner fails to demonstrate that his attorney rendered ineffective assistance.

A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.[4] See Hill v. Lockhart, 474 U.S. 52, 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973). A defendant seeking to challenge the validity of his guilty plea on the ground of ineffective assistance of counsel must satisfy the two-part standard of Strickland v. Washington, 466 U.S. 668, 687 (1984), by showing "that (1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Womack v. Del Papa, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting Hill, 474 U.S. at 57-59); see also Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986) (same). It is not enough for the prejudice prong that

---

[4] The decision whether or not to accept a plea offer is a critical stage of the prosecution at which the Sixth Amendment right to counsel attaches. Iowa v. Tovar, 541 U.S. 77, 80-81 (2004).

the petitioner shows a reasonable possibility that he might have obtained a better plea agreement but for counsel's errors.  See Premo v. Moore, 562 U.S. 115, 128-29 (2011).

Where the alleged error is a failure to investigate or discover potentially exculpatory evidence, the determination of whether the error "prejudiced" the defendant will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  This assessment will depend in large part on a prediction of whether the evidence likely would have changed the outcome of the trial.  Similarly, where the error is a failure to advise of a potential affirmative defense, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.  See Hill, 474 U.S. at 59.  See, e.g., Lambert v. Blodgett, 393 F.3d 943, 983 (9th Cir. 2004) (finding no prejudice from counsel's alleged failure to investigate a defense of fetal alcohol syndrome because there was little chance such a defense would have succeeded; also noting that neither Ninth Circuit, nor the Supreme Court, has ever imposed such an obligation in non-capital cases).  See also United States v. Silveira, 997 F.3d 911, 914-15 (9th Cir. 2021) (in direct criminal appeal, finding no prejudice from defense attorney's failure to explain a theoretically possible defense to the criminal defendant because that defense was not viable).

The state appellate court denied this claim when it was raised in a habeas petition:

> Even if the [IAC] claim were not barred, petitioner fails to show prejudice.  He states that he explained his mental illness "in detail" to his trial counsel ~ (Petr's Decl. ¶ 12) ~ Trial counsel was therefore aware of petitioner's history, and thus petitioner cannot establish prejudice from counsel's inability to obtain petitioner's mental health records.

ECF No. 1-2 at 50.

The state appellate court's rejection of this claim was not unreasonable.  Petitioner claims that counsel was ineffective for failing to investigate a possible mental health defense, including obtaining his medical records, prior to advising Petitioner to accept the plea offer.  ECF No. 1-1 at 22.  The state appellate court pointed to Petitioner's declaration wherein he stated that he explained his mental illness "in detail" to counsel.  Because counsel was already aware of Petitioner's mental health issues, the state appellate court found Petitioner failed to show prejudice counsel's alleged failure.  This was not an unreasonable application of Strickland.  Under the

1  second prong, Petitioner must show that but for counsel's failure, he would not have pleaded
2  guilty and would have insisted on going to trial. Womack, 497 F.3d at 1002. In other words,
3  Petitioner would have to show that obtaining his mental health records would have led counsel to
4  change his recommendation as to the plea. But as mentioned above, counsel was already aware of
5  Petitioner's mental health history when he recommended Petitioner accept the plea. Furthermore,
6  the summary of the offenses shows that when investigators interviewed him about the first
7  threatening letter, Petitioner repeatedly stated that he was willing and capable of carrying through
8  with the threats. See supra at 4. Petitioner also mentioned his mental health issues for which he
9  was taking medication regularly, and that he felt "completely in control" when he wrote the letter
10 and "knew exactly" what he had done. Id. Even after the investigators advised him that the
11 threatening letter would likely lengthen his sentence, Petitioner expressed indifference and
12 repeated his willingness to carry out his threats. Id. Based on these facts which indicated that
13 Petitioner clearly understood the nature of his criminal actions and the potential consequences,
14 there was little chance that a mental health defense would have succeeded at trial. See Hill, 474
15 U.S. at 59. Thus, it cannot be said that there is a reasonable probability that, but for counsel's
16 failure to obtain his mental health records, counsel would have advised Petitioner to reject the plea
17 offer such that Petitioner would not have pleaded guilty and would have insisted on going to trial.
18     For these reasons, the state appellate court's rejection of this claim was not contrary to, or
19 an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner is not entitled
20 to relief on this ineffective assistance of counsel claim.

### IV.  CONCLUSION

22 After a careful review of the record and pertinent law, the Court concludes that the Petition
23 for a Writ of Habeas Corpus must be **DENIED**.
24     Further, a Certificate of Appealability is **DENIED**. See Rule 11(a) of the Rules Governing
25 Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a
26 constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable
27 jurists would find the district court's assessment of the constitutional claims debatable or wrong."
28 Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate

of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated: September 27, 2023

EDWARD J. DAVILA
United States District Judge